UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

GELASIO JUAN,                                          :
                                                       :
                    Plaintiff,                         :
                                                       :
              -against-                                :
                                                       :
SON OF POLISI, INC., d/ b/ a JOHN'S PIZZA,             :        **REPORT AND**
MARIO POLISI, and, ALAIN ALDINOR,                      :        **RECOMMENDATION**
                                                       :        1:19-CV-04662 (LDH)(PK)
                    Defendants.                        :
                                                       :
---------------------------------------------------------------------- X

**Peggy Kuo, United States Magistrate Judge:**

On August 13, 2019, Plaintiff Gelasio Juan commenced an action against Son of Polisi, Inc.,

Mario Polisi, and Alain Aldinor (collectively, "Defendants") for violations of the Fair Labor Standards

Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the New York Labor Law, N.Y. Lab. L. § 650, *et seq.*

("NYLL"). (Compl., Dkt. 1.)

Before the Court on referral from the Honorable LaShann DeArcy Hall is Plaintiff's Motion

for Default Judgment against Defendants. ("Motion," Dkt. 10; July 31, 2020 Min. Order.) For the

reasons set forth below, the undersigned respectfully recommends that the Motion be granted as

described below.

**FACTUAL BACKGROUND**

The following facts are taken from the Complaint, the Affidavit of Gelasio Juan in Support of

the Motion ("Juan Affidavit," Dkt. 11), the transcript of the Court's December 14, 2020 inquest

("Inquest"), and Plaintiff's letter dated December 15, 2020 (Dkt. 18).

Son of Polisi, Inc., is a domestic business corporation organized and existing under the laws

of New York. (Compl. ¶ 6.) It does business as "John's Pizza," a restaurant located at 111-15 Lefferts

Boulevard, South Ozone Park, New York 11420.[1]  (*Id.* ¶¶ 6, 11.)  Defendants Mario Polisi and Alain Aldinor ("Individual Defendants") are the "owner[s], general manager[s], director[s], and/or managing agent[s]" of John's Pizza, and they both "participated" in the restaurant's "day-to-day operations." (*Id.* ¶¶ 7-8; *see also id.* ¶ 18.)  Polisi and Aldinor "create[d] and implement[ed] crucial business policies, including decisions concerning the number of hours the employees [were] required to work, the amount of pay that the employees [were] entitled to receive, and the method and manner by which the employees [were] paid."  (*Id.* ¶¶ 16-17; *see also id.* ¶¶ 36-37.)

Plaintiff started working at John's Pizza in 2000 as a cleaner.  (Juan Aff. ¶ 4; Compl. ¶ 24.)[2] By 2009, Plaintiff was employed as a pizza maker and "general helper."  (Juan Aff. ¶ 4; Compl. ¶¶ 10, 26.)  For the six years prior to the Complaint's filing, Plaintiff worked "approximately fifty-three (53) hours per week" at John's Pizza, spread across five shifts.  (Juan Aff. ¶ 5; Compl. ¶ 27.)  On Tuesdays, Wednesdays, Fridays, and Saturdays, he worked from 11:00 am until 11:00 pm and, on Thursdays, he worked from 1:00 pm until 6:00 pm.  (Juan Aff. ¶ 5; Compl. ¶ 27.)  From 2013 until the end of 2015, Plaintiff's salary was $450 per week.  (*See* Juan Aff. ¶ 7; Compl. ¶ 28.)[3]  In 2016, his salary was increased to $511 per week.  (Juan Aff. ¶ 7; Compl. ¶ 28.)  "Plaintiff did not receive tips in connection with his employment."  (Compl. ¶ 29.)

Defendants did not provide Plaintiff with overtime compensation for the work he performed above forty hours per week.  (Juan Aff. ¶ 8; *see also* Compl. ¶ 28.)  Defendants always paid him in cash, and they never provided him with a receipt for his compensation, or a statement of hours worked or

---

[1] This report and recommendation will refer to Son of Polisi, Inc., as "John's Pizza."

[2] The Complaint alleges that Plaintiff "worked for the restaurant and directly for Mario Polisi, for approximately twenty-four (24) years."  (Compl. ¶ 15.)  Because Plaintiff signed the Juan Affidavit and swore to it (*see* Juan Aff. at 1), the information set forth therein is used to analyze Defendants' liability and Plaintiff's damages to the extent the information is inconsistent with the Complaint.

[3] At the Inquest, Plaintiff's counsel stated that, based on the contemporaneous notes he took during his meeting with Plaintiff, Plaintiff's salary in 2013 was $450 per week.

wages paid.  (Juan Aff. ¶ 8; Compl. ¶ 15.)  Plaintiff alleges that Defendants "did not keep track of his daily working hours."  (Compl. ¶ 33.)  He never "sign[ed] anything for [his] pay," "punch[ed] a time clock or otherwise record[ed] [his] daily working hours."  (Juan Aff. ¶ 8.)  When Plaintiff worked more than ten hours per shift on Tuesday, Wednesdays, Fridays, and Saturdays, he "did not receive additional pay."  (Juan Aff. ¶ 9.)  Plaintiff alleges that Defendants' failure "to pay [his] lawfully earned wages," including the minimum wage, overtime, and spread of hours compensation, was "knowing[ ] and willful[ ]."  (Compl. ¶¶ 19, 21-22; *see also id.* ¶¶ 30-31.)

"During most of [Plaintiff's] employment, [he] was supervised by Mario Polisi."  (Juan Aff. ¶ 11.)  "[D]uring the last year of [Plaintiff's] employment," Aldinor was Plaintiff's supervisor, although, as Plaintiff's counsel stated at the Inquest, Polisi continued to own John's Pizza.  (Dkt. 18; Juan Aff. ¶ 11.)  Aldinor fired Plaintiff "on or around June 21, 2019."  (Juan Aff. ¶¶ 3, 11; *see also* Compl. ¶ 25.)  Plaintiff was not paid for his last week of work, and he did not receive any wages for his first week.  (Juan Aff. ¶ 11; Compl. ¶ 20.)

Plaintiff alleges that John's Pizza "was, and continues to be, an 'enterprise engaged in commerce,' within the meaning of the FLSA in that it (i) has . . . employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has [ ] had an annual gross volume of sales of at least $500,000."  (Compl. ¶¶ 12-13.)

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on August 13, 2019.  (Dkt. 1.)  Plaintiff asserts three causes of action: (1) violation of the FLSA's minimum wage and overtime compensation provisions (*id.* ¶¶ 38-53); (2) violation of the NYLL's minimum wage, overtime compensation, and spread of hours provisions (*id.* ¶¶ 54-60); and (3) violation of the New York State Wage Theft Prevention Act (*id.* ¶¶ 61-68).

Plaintiff served process on all three Defendants on September 7, 2019 (Dkts. 5-7) and filed the Motion on November 19, 2019 (Dkt. 10). In support of the Motion, Plaintiff also submitted his affidavit (Dkt. 11), the Declaration of Peter Hans Cooper in Support of Plaintiff's Motion for Default Judgment ("Cooper Declaration," Dkt. 12), and the Memorandum of Law in Support of Plaintiff's Motion for Default Judgment ("Memorandum," Dkt. 13). Plaintiff served copies of the Motion and the accompanying papers on Defendants on November 19, 2019. (Dkt. 14.)

In the Motion, Plaintiff requests that Defendants be found "individually, jointly, and severally" liable in the amount of $211,856. (Dkt. 12-6.) Plaintiff also requests attorneys' fees and costs in the amount of $8,338. (*Id.*)

The Inquest was held on December 14, 2020, at which Plaintiff's counsel confirmed that Plaintiff is not pursuing a wage notice claim pursuant to New York Labor Law § 195(1)(a).

## **LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process regarding default judgment. First, the Clerk of the Court enters a party's default when a defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Then, the plaintiff can apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Guideone Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

Before a court grants a motion for default judgment, the court may, but is not required to, adjudicate personal jurisdiction. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (leaving open the question "whether a district court *must* investigate its personal jurisdiction over [a] defendant before entering a default judgment"); *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.").

4

Additionally, the Court must ensure that: (1) the plaintiff took all the required procedural steps in moving for default judgment pursuant to Local Civ. R. 55.2(c); and (2) the plaintiff's allegations, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability," *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), and the court draws all reasonable inferences in favor of the plaintiff. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Nevertheless, a default is "not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. Instead, the plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence and detailed affidavits. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The amount of damages awarded, if any, must be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

When a plaintiff claims FLSA and NYLL violations in the context of a default judgment, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan*, 897 F. Supp. 2d at 83; *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)). "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [the recordkeeping requirements] of the [FLSA]." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946).

A court "possesses significant discretion" in granting a motion for default judgment, "including whether the grounds for default are clearly established and the amount of money potentially

involved." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## DISCUSSION

### I.    Procedural Compliance

To establish entitlement to default judgment, a plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 9-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). An individual may be served according to the law of the state where service is made. Fed. R. Civ. P. 4(e)(1). Likewise, a corporation may be served in the same manner for serving an individual as prescribed by Federal Rule of Civil Procedure 4(e)(1) or by delivering a copy of the summons and complaint to an officer appointed by law to receive such service. Fed. R. Civ. P. 4(h)(1).

Plaintiff served the Individual Defendants by delivering copies of the summons and Complaint to a person of suitable age and discretion at the John's Pizza restaurant and then mailing copies of these documents to the same address. (Dkts. 6-7.) This is proper service. N.Y. C.P.L.R. § 308(2) ("Personal service upon a natural person shall be made by . . . delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and . . . by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' . . . ."). Plaintiff served the corporate Defendant by delivering a true and correct copy of the summons and Complaint to the Defendant's general agent. (Dkt. 5.) This is also proper service. Fed. R. Civ. P. 4(h)(1)(B).

As part of his Motion, Plaintiff included a notice of motion (Dkt. 10, Local Civ. R. 7.1(a)(1)), a memorandum of law (Dkt. 13, Local Civ. R. 7.1(a)(2)), a copy of the Clerk's certificate of default (Dkt. 12-3, Local Civ. R. 55.2(b)(1)), a copy of the claim (Dkt. 12-1, Local Civ. R. 55.2(b)(2)), proof of service of the claim (Dkt. 12-2, Local Civ. R. 55.1(b)(3)), a proposed judgment (Dkt. 12-6, Local

Civ. R. 55.2(b)(3)), and proof of mailing the Motion to Defendants (Dkt. 14, Local Civ. R. 55.2(c)). Although Plaintiff did not submit proof that the Individual Defendants are not on active military duty as part of the Motion, he did submit such proof with his certificates of service.  (Dkts. 6, 7.)  This is sufficient to satisfy Local Civil Rule 55.1(b)(1).   Accordingly, the undersigned recommends finding that Plaintiff complied with the procedural requirements for a default judgment.

## II.      Subject Matter Jurisdiction

Jurisdiction over Plaintiff's FLSA claims is proper pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. § 1367.

## III.     Liability

### A.     Statute of Limitations

The FLSA and the NYLL have different statutes of limitations.  Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 9-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 9-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)).  "The statute of limitations starts to run when the employee begins to work for the employer." *Id.*  The NYLL's statute of limitations is six years.  N.Y. Lab. L. § 198(3).

Plaintiff commenced this action on August 13, 2019.  (Dkt. 1.)  Because Defendants defaulted, the three-year statute of limitations applies to Plaintiff's FLSA claims, and he may recover under the FLSA for any claims that accrued starting on August 13, 2016.  Plaintiff may recover under the NYLL for any claims that accrued starting on August 13, 2013.

B.      *Whether the FLSA Applies*

The FLSA is to be "construed [ ] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted).  To support a cause of action under the FLSA, Plaintiffs must establish that: (1) Defendants are "employer[s] subject to the FLSA"; (2) Plaintiff is an "'employee' within the meaning of the FLSA"; and (3) "the employment relationship is not exempted from the FLSA." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451 (CBA)(CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018) (citation omitted).  Courts in the Second Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

1.      **Whether Defendants are Employers**

Plaintiff argues that all three Defendants are employers within the meaning of the FLSA.  (*See* Mem. at 5.)  The undersigned considers separately whether the Individuals Defendants and John's Pizza are employers.  *See Loo v. I.M.E. Rest., Inc.*, No. 17-CV-02558 (ARR)(RER), 2018 WL 4119234, at *4 (E.D.N.Y. Aug. 29, 2018) ("A single employee can have multiple employers under the FLSA, and an employer can be held liable even if he was not personally complicit in FLSA violations." (quotation and citation omitted)).

a.      **The Individual Defendants**

"The underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees . . . ." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam).  "[T]o be an 'employer,' an individual defendant must possess control over a company's

actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is also guided by the factors the Second Circuit set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Irizarry*, 722 F.3d at 110. The factors that the Court may consider are "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

The FLSA "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)) (alteration omitted).

In addition to being an "owner, general manager, officer, director, and/or managing agent" of John's Pizza (Compl. ¶ 7), Defendant Polisi also personally supervised Plaintiff when he started working at John's Pizza. (Compl. ¶ 15; Juan Aff. ¶ 11.) Polisi stopped supervising Plaintiff in June 2018. (Dkt. 18.) After this point, he continued to own and manage the restaurant. And, while he still went "[in]to the restaurant regularly," he did not do so every day. (Juan Aff. ¶ 11.) This is sufficient to establish that Polisi was Plaintiff's employer within the meaning of the FLSA throughout all of Plaintiff's employment. *See Irizarry*, 722 F.3d at 113-17 (holding that the individual defendant was an employer, even though he "did not exercise managerial control in stores on the day-to-day level of a

manager" and "there [was] no evidence that he was responsible for the FLSA violations" because he "had functional control over the enterprise as a whole"); *Scalia v. Liberty Gas Station & Convenience Store, LLC*, 444 F. Supp. 3d 390, 399-400 (N.D.N.Y. 2020) (finding that an individual defendant who owned two pizza places was the employer of a plaintiff who worked at one of the places even though defendant visited the other place more frequently because defendant "remained empowered" to hire and fire employees and "'was active in running' both" pizza places (quoting *Irizarry*, 722 F.3d at 116)).

Aldinor was clearly Plaintiff's employer beginning in June 2018 when he assumed supervision of Plaintiff. *See Rodriguez v. Yayo Rest. Corp.*, No. 18-CV-4310 (FB)(PK), 2019 WL 4482032, at *5 (E.D.N.Y. Aug. 23, 2019), *R&R adopted*, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019) (finding that an individual defendant was plaintiff's employer when defendant "shared control over" plaintiff). As for Aldinor's status prior to this date, the Complaint includes boilerplate allegations about Aldinor's ownership of the restaurant and his control over its employees. (*See* Compl. ¶¶ 8, 17, 37.) However, the more specific statements in the Juan Declaration, as confirmed by Plaintiff's counsel at the Inquest and in his letter (*see* Dkt. 18), make clear that Aldinor was not Plaintiff's employer before June 2018. *See Chan v. Xifu Food, Inc.*, No. 18-CV-5445 (ARR)(RML), 2020 WL 5027861, at *5 (E.D.N.Y. Aug. 5, 2020), *R&R adopted*, 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020) (holding that defendant was not an employer because plaintiff testified that another individual was plaintiff's boss, and another plaintiff stated that defendant "did not manage the store during the time that he worked there, was no involved in his hiring, did not set his work schedule, and was present at the store only 'occasionally'").

Accordingly, the undersigned finds that (1) Polisi was Plaintiff's employer from August 13, 2013 until June 21, 2019, and (2) Aldinor was Plaintiff's employer from June 2018 until June 21, 2019.

### b.     John's Pizza

"[A]n employer is subject to both the minimum wage and overtime provisions of the FLSA if *either* (1) their employees are 'engaged in commerce' or (2) the employer is an 'enterprise engaged in

commerce.'" *Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009) (quoting 29 U.S.C. §§ 206, 207) (original emphasis). "These two distinct types of coverage are termed 'individual coverage' and 'enterprise coverage,' respectively." *Id.* (citation omitted). The enterprise coverage test considers whether the employer

> has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). The individual coverage test takes into account "the employment actions of each" plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Saucedo*, 2016 WL 8376837, at *4. "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

The Complaint alleges that John's Pizza has annual gross volume of sales of at least $500,000 and "was, and continues to be, an 'enterprise engaged in commerce,' within the meaning of the FLSA." (Compl. ¶¶ 12-13.) It further alleges that the employees of John's Pizza "engaged in commerce or the production of goods for commerce," or they "handle[d], [sold], or otherwise work[ed] on goods or materials that have been moved in or produced for commerce." (*Id.* ¶ 12 (quotations omitted).) Although these allegations merely repeat the statutory elements, they are sufficient. *Huerta v. Victoria Bakery*, No. 10-CV-4754 (RJD)(JO), 2012 WL 1107655, *2 (E.D.N.Y. Mar. 30, 2012) (stating that a court can "infer[ ] the requisite interstate commerce connection under [a] sensible approach"). Given the restaurant's annual sales, it can be inferred that some of the materials used to make the food it sold originated in interstate commerce. *Id.* Accordingly, both the enterprise and individual coverage tests are satisfied, and John's Pizza is an employer within the meaning of the FLSA. *See Fermin*, 93 F. Supp. 3d at 33 (concluding that defendant "restaurant with an eat-in dining area and over $500,000 in

annual sales" was an employer within the meaning of the FLSA because it was reasonable to infer that not all of its sales came exclusively from New York, and that some of the goods used to operate the restaurant "moved or were produced in interstate commerce").

### 2.      Whether Plaintiff is an Employee

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  In addition to the allegations in the Complaint (Compl. ¶¶ 10, 15, 24-26), Plaintiff provided a sworn statement that Defendants employed him as a cleaner, general helper, and pizza maker.  (Juan Aff. ¶¶ 1, 3-4, 11.)  Plaintiff thus falls within the FLSA's statutory definition of "employee."

### 3.      Whether the Employment Relationship Is Exempted from the FLSA

"Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014).  For example, "bona fide 'professional' employees, a group that includes employees compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advance knowledge in a field of science or learning" are not covered by the FLSA.  *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG)(CLP), 2015 WL 431807, at *3 (E.D.N.Y. Feb. 3, 2015) (quoting 29 U.S.C. § 213(a)(1)). An employee's "exempt status depends less on his title, and more on the actual duties performed." *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).

Plaintiff was employed as a cleaner and then a pizza maker.  (Juan Aff. ¶ 4.)  Such employment is not exempt from the FLSA's coverage.  *See Fermin*, 93 F. Supp. 3d at 32 (explaining that jobs such as "waiter, kitchen helper/food preparer, cook and dishwasher all constitute non-exempt employment under the FLSA").

### C.      Whether the NYLL Applies

"To recover under the NYLL, plaintiff must prove that he was an 'employee' and that the defendant is an 'employer' as defined by the statute." *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP),

2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law." *Id.* The NYLL broadly defines an employee as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. L. § 651(5). Although the test for whether a plaintiff is an employee under the NYLL is "substantially similar to the FLSA," the New York test "focuses more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quotations and citation omitted). In other words, "'the critical inquiry in determining whether an employment relationship exists [under the NYLL] pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" *Id.* (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (N.Y. 2003)). As set forth above, Defendants exercised control over the terms of Plaintiff's employment. Therefore, Plaintiffs have established that they were employees.

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Fermin*, 93 F. Supp. 3d at 37, Defendants are employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.   *Plaintiff's Minimum Wage Claims*

#### 1.   <u>Applicable Minimum Wage Rates</u>

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; N.Y. Lab. L. § 652. "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages." *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *R&R adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); *see also* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse

13

noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").

The federal minimum wage has been $7.25 since July 24, 2009. *See* U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited Dec. 5, 2020).

From January 1, 2007 until December 30, 2013, the New York minimum wage was $7.15. From December 31, 2013 until December 30, 2014, the New York minimum wage was $8.00. The New York minimum wage increased to $8.75 on December 31, 2014. From December 31, 2015 until December 30, 2016, the minimum wage was $9.00. Starting on December 31, 2016, the minimum wage in New York City depended on the size of the employer. The minimum wage for "large employers"[4] from December 31, 2016 until December 30, 2017 was $11.00. Starting on December 31, 2017, the minimum wage increased to $13.00. It increased again on December 31, 2018 to $15.00. N.Y. Lab. L. § 652(1)(a)(i).

## 2.    Whether Plaintiff Was Paid the Minimum Wage

To determine whether Defendants paid Plaintiff at least the minimum wage, it is necessary to determine his "regular hourly rate of pay." As an employee of a restaurant, Plaintiff is subject to New York's Hospitality Industry Wage Order ("Order"). *See generally* N.Y. Comp. Codes R. & Regs. tit. 12 Part 146.[5] Under the Order, an "employee's regular hourly rate of pay shall be calculated by dividing

---

[4] Plaintiff provides no allegations as to how many employees worked for Defendants. However, he uses the minimum wages applicable to "large employers"—defined as "[e]very employer of eleven or more employees," N.Y. Lab. L. § 652(1)(a)(i)—in his damages calculations. (*See* Dkt. 12-4 at 4-6.) Given Plaintiff's allegation that John's Pizza has $500,000 in annual sales (Compl. ¶ 12), it can be inferred that Defendants employed at least eleven people.

[5] The Order applies to "[e]very employer in the hospitality industry," which "includes any restaurant" defined as "any eating or drinking place that prepares and offers food or beverage for human consumption either on any of its premises or by such service as catering, banquet, box lunch, curb service or counter service to the public." N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146-1.1(a), 146-3.1(a), 146-3.1(b).

the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Id.* § 146-3.5(b); *see also Long Lin v. New Fresca Tortilla, Inc.*, No. 18-CV-3246 (RJD)(RER), 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *R&R adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).  Plaintiff worked 53 hours per week.  Accordingly, his regular hourly rate of pay is calculated using 40 hours.

| Time Period | Minimum Wage | Weekly Wage[6] | Effective Hours Per Week | Regular Hourly Rate of Pay | Difference Between Min. Wage & Regular Hourly Wage |
|---|---|---|---|---|---|
| August 18, 2013 – December 30, 2013 | $7.15 | $450.00 | 40 | $11.25 | N/A |
| December 31, 2013 – December 30, 2014 | $8.00 | $450.00 | 40 | $11.25 | N/A |
| December 31, 2014 – December 30, 2015 | $8.75 | $450.00 | 40 | $11.25 | N/A |
| December 31, 2015 – December 30, 2016 | $9.00 | $511.00 | 40 | $11.25 | N/A |
| December 31, 2016 – December 30, 2017 | $11.00 | $511.00 | 40 | $12.78 | N/A |
| December 31, 2017 – December 30, 2018 | $13.00 | $511.00 | 40 | $12.78 | $0.23 |
| December 31, 2018 – June 21, 2019 | $15.00 | $511.00 | 40 | $9.64 | $2.23 |

Accordingly, the undersigned finds that Defendants did not pay Plaintiff the New York minimum wage from December 31, 2017 to June 21, 2019.

E.    *Plaintiff's Overtime Claim*

"The FLSA mandates that [a covered employee] be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week . . . ." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C.

---

[6] Plaintiff states that when his wage was increased, it happened in the new year (*e.g.*, his wage on December 31, 2015 was $450 and his wage on January 1, 2016 was $511).  This change in Plaintiff's salary does not align with changes in the New York minimum wage, which were always effective on December 31st.  For ease of calculation, the undersigned assumes that Plaintiff's wages increased on December 31st and not on January 1st.

§ 207(a)) (footnote omitted).  "[T]he NYLL adopts this same standard."  *Id.* (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.)  Although there is not "an all-purpose pleading template [for] alleging overtime," plaintiffs must "provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'"  *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff alleges that although he consistently worked 53 hours per week, Defendants never paid him overtime compensation.  (Compl. ¶ 27; Juan Aff. ¶¶ 5, 8.)  This is sufficient to establish that Plaintiff is entitled to overtime under both the FLSA and the NYLL.  *See Apolinar v. Glob. Deli & Grocery, Inc.*, No. 12-CV-3446 (RJD)(VMS), 2013 WL 5408122, at *6 (E.D.N.Y. Sept. 25, 2013) (holding that the "[p]laintiffs have similarly sufficiently alleged violations of state and federal overtime pay provisions" when they "allege[d] in their [c]omplaint that, although they worked over forty hours per workweek, they were not paid time-and-a-half for hours worked in excess of forty hours per workweek").

F.    *Spread of Hours*

"The spread of hours is the length of the interval between the beginning and end of an employee's workday."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(a).  "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."  *Id.*  In his Affidavit, Juan states that he "did not receive additional pay when [he] worked a shift of more than ten (10) hours, which occurred four (4) shifts per week."  (Juan Aff. ¶ 9; *see also* Compl. ¶ 22.)  This allegation is sufficient to establish that Defendants did not comply with New York's spread of hours requirement.  *See Chen v. Y Café Ave B Inc.*, No. 18-CV-4193 (JPO), 2019 WL 2324567, at *4 (S.D.N.Y. May 30, 2019) (finding that plaintiff's "alleg[ations] that he worked more than 10 hours every day, but [d]efendants have never paid him the extra spread-of-hours compensation" was sufficient to establish on a default judgment motion that defendants violated the NYLL (citation omitted)).

### G.  Wage Statement

New York Labor Law § 195(3) requires "[e]very employer" to "furnish each employee with a statement with every payment of wages."  The statement must include: (1) the pay period's dates; (2) the name of the employer and its address and phone number; (3) the employee's rate of pay and how it is calculated; (4) gross wages, net wages, deductions, and claimed allowances; (5) wage supplements; (6) the employee's rate of pay and overtime rate or rates of pay; and (7) the number of hours worked at the employee's regular rate and the number of hours worked at the overtime rate(s).  *See* N.Y. Lab. L. § 195(3).

Plaintiff states that he did not receive any wage statements when he received his pay.  (Juan Aff. ¶ 8; Compl. ¶ 15.)  Thus, Plaintiff has stated a claim for breach of N.Y. Labor Law § 195(3).

## IV.  Damages

### A.  Minimum Wage

As set forth above, Defendants failed to pay Plaintiff the minimum wage between December 31, 2017 to June 21, 2019.  To calculate the damages that Plaintiff incurred as a result of this failure, the difference between the applicable minimum wage and Plaintiff's regular hourly wage is multiplied by forty.  *See Long Lin*, 2019 WL 3716199, at *3.  The period of December 31, 2017 to December 30, 2018 has been split to account for the fact that Aldinor was not Plaintiff's employer before June 2018.

| Period of Time | Number of Weeks | Diff. Between Min. Wage & Regular Hourly Rate | Weekly Min. Wage Shortfall | Period Min. Wage Shortfall |
|---|---|---|---|---|
| December 31, 2017 – May 31, 2018 | 21.5[7] | $0.23 | $9.00 | $193.50 |
| June 1, 2018 – December 30, 2018 | 30.5 | $0.23 | $9.00 | $274.50 |
| December 31, 2018 – | 24.5[8] | $2.23 | $89.00 | $2,180.50 |

[7] There are twenty-one weeks and four days between December 31, 2017 and May 31, 2018.  For ease of calculation, the undersigned assumes that there are 21.5 weeks between these two dates.

[8] There are twenty-four weeks and four days between December 31, 2018 and June 21, 2019.  For ease of calculation, the undersigned assumes that there are 24.5 weeks between these two dates.

| June 21, 2019 | | | | | |
|---|---|---|---|---|---|
| *Min. Wage Shortfall Prior to June 1, 2018* | | | | | *$193.50* |
| *Min. Wage Shortfall June 1, 2018 to June 21, 2019* | | | | | *$2,455.00* |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $193.50 in minimum wages prior to June 1, 2018, and $2,455.00 in minimum wages from June 1, 2018 until June 21, 2019.

### B.    Overtime

Plaintiff was not compensated for his overtime throughout the course of his employment.  To calculate the overtime compensation he is owed, 150% of the higher of (*i*) his regular rate of pay, or (*ii*) the applicable minimum wage is multiplied by thirteen, the number of hours Plaintiff worked over forty each week.  *See Long Lin*, 2019 WL 3716199, at *3.  This results in the amount of overtime compensation owed to Plaintiff on a weekly basis.  To obtain the total overtime compensation owed for each time period, this per week amount is multiplied by the number of weeks in that time period.

The following table sets forth those calculations:

| Period of Time | Number of Weeks | Higher of Min. Wage or Hourly Rate | 150% of Min. Wage or Hourly Rate | Hours Per Week over 40 | Weekly Overtime Due | Period Overtime Due |
|---|---|---|---|---|---|---|
| August 18, 2013 – December 30, 2013 | 19 | $11.25 | $16.88 | 13 | $219.38 | $4,168.13 |
| December 31, 2013 – December 30, 2014 | 52 | $11.25 | $16.88 | 13 | $219.38 | $11,407.50 |
| December 31, 2014 – December 30, 2015 | 52 | $11.25 | $16.88 | 13 | $219.38 | $11,407.50 |
| December 31, 2015 – December 30, 2016 | 52 | $11.25 | $16.88 | 13 | $219.38 | $11,407.50 |
| December 31, 2016 – December 30, 2017 | 52 | $12.78 | $19.17 | 13 | $249.21 | $12,958.92 |
| December 31, 2017 – May 31, 2018 | 21.5 | $13.00 | $19.50 | 13 | $253.50 | $5,450.25 |
| June 1, 2018 – December 30, 2018 | 30.5 | $13.00 | $19.50 | 13 | $253.50 | $7,731.75 |
| December 31, 2018 – June 21, 2019 | 24.5 | $15.00 | $22.50 | 13 | $292.50 | $7,166.25 |
| *Overtime Due Prior to June 1, 2018* | | | | | | *$56,799.80* |

| *Overtime Due June 1, 2018 to June 21, 2019* | *$14,898.00* |
|---|---|

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $56,799.80 in unpaid overtime prior to June 1, 2018, and $14,898.00 in unpaid overtime from June 1, 2018 to June 21, 2019.

### C.    Plaintiff's Final Week of Work

Plaintiff did not receive any wages his final week of work.  The damages set forth above compensate Plaintiff for the overtime he worked for his final week and the difference between minimum wage and his regular hourly rate of pay.  However, they did not compensate him for the forty hours of work at his regular hourly rate of pay.  Accordingly, the undersigned respectfully recommends that Plaintiff be awarded an additional $511.00.

### D.    Spread of Hours

As set forth above, for each day on which Plaintiff worked a shift of more than ten hours, Plaintiff is entitled to an additional hour of pay at the minimum wage rate.  Plaintiff worked more than ten hours a shift four days a week.  (Juan Aff. ¶ 9; *see also* Compl. ¶¶ 22, 27.)

| Period of Time | Number of Weeks | Days Per Week | Minimum Wage | Total Per Week | Total Per Period |
|---|---|---|---|---|---|
| August 18, 2013 – December 30, 2013 | 19 | 4 | $7.15 | $28.60 | $543.40 |
| December 31, 2013 – December 30, 2014 | 52 | 4 | $8.00 | $32.00 | $1,664.00 |
| December 31, 2014 – December 30, 2015 | 52 | 4 | $8.75 | $35.00 | $1,820.00 |
| December 31, 2015 – December 30, 2016 | 52 | 4 | $9.00 | $36.00 | $1,872.00 |
| December 31, 2016 – December 30, 2017 | 52 | 4 | $11.00 | $44.00 | $2,288.00 |
| December 31, 2017 – May 31, 2018 | 21.5 | 4 | $13.00 | $52.00 | $1,118.00 |
| June 1, 2018 – December 30, 2018 | 30.5 | 4 | $13.00 | $52.00 | $1,118.00 |
| December 31, 2018 – | 24.5 | 4 | $15.00 | $60.00 | $1,470.00 |

| June 21, 2019 | | | | | | |
|---|---|---|---|---|---|---|
| *Spread of Hours Prior to June 1, 2018* | | | | | | *$8,187.40* |
| *Spread of Hours June 1, 2018 to June 21, 2019* | | | | | | *$4,174.00* |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $8,187.40 in spread of hours compensation for the period before June 1, 2018, and $4,174.00 for the period between June 1, 2018 and June 21, 2019.

### E.   Wage Statements

New York Labor Law § 198(1-d) states that an employee who "is not provided a statement or statements as required by [§ 195(3)] may recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." Plaintiff worked for Defendants for more than twenty days; therefore, he is entitled to the maximum award of $5,000.[9]

Because all three Defendants were Plaintiff's employers for more than twenty days, the undersigned respectfully recommends that they are all liable under § 198(1-d).

### F.   Liquidated Damages

Plaintiff seeks liquidated damages equal to 100% of the total amount of the wages due to him. (Mem. at 9.) Under the FLSA and the NYLL, an employee may be entitled to recover liquidated damages equal to the amount owed for unpaid minimum wage and overtime compensation. 29 U.S.C. § 216(b); N.Y. Lab. L. § 198(1-a). If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, a court may decide not to award liquidated damages. 29

---

[9] Under the version of § 198(1-d) in place when Plaintiff began working at John's Pizza, the statutory maximum for violations of § 195(3) was $2,500. *See* N.Y. Lab. L. § 198(1-d) (effective Apr. 9, 2011). The statutory maximum increased on February 27, 2015. *See* N.Y. Lab. L. § 198(1-d) (effective Feb. 27, 2015). Because Plaintiff worked at John's Pizza for more than twenty days after February 27, 2015, he is entitled to the higher amount of damages. *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *21-22 (E.D.N.Y. Sept. 22, 2017), *R&R adopted*, Dkt. Order Oct. 18, 2017.

U.S.C. § 260; *see* N.Y. Lab. L. § 198(1-a).  Since Defendants did not respond to the Motion, there is no good faith and liquidated damages are appropriate.  *See Herrara v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages—that is, liquidated damages under both the NYLL and FLSA.  *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  In light of the principle that "the law providing the greatest recovery will govern," Plaintiffs may be awarded liquidated damages pursuant to the NYLL or the FLSA.  *Charvac v. M&T Project Managers of N.Y., Inc.*, No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted).  Liquidated damages are not available for violations of the NYLL wage statement provision.  *See* N.Y. Lab. L. § 198(1-a), (1-d).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded liquidated damages in the amount of $65,180.70 for the period of time before June 1, 2018, and $22,038.00 for the period of time between June 1, 2018 and June 21, 2019.

## V.     Attorneys' Fees and Costs

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  Plaintiff requests $8,338 in fees and costs.  (Mem. at 13-14.) [10]

### A.     *Attorneys' Fees*

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request.  *Mahoney v. Amekk Corp.*,

---

[10] The undersigned considers this rounded-down number, although Exhibit E to the Cooper Declaration details fees of $7,792.50 and costs of $546.00 (Dkt. 12-5), totally $8,338.50.  During the Inquest, Plaintiff's counsel corrected two typographical errors in the legal services invoice: the entry for July 12, 2011 should be for July 12, 2019; and on August 14, 2019, counsel worked 1.3 hours, not 2.3 hours as stated.  (*See* Dkt. 12-5.)

No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).  Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

The appropriate attorneys' fee is calculated by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  *Saucedo*, 2016 WL 8376837, at *17.  This "lodestar method" may be adjusted based on the circumstances of the case.  *Id.*  Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted).  "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted).  "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)).  "Inadequate documentation" is another "ground[ ] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

### 1.   Hourly Rate

Plaintiff seeks fees for the work done by his counsel, Peter Cooper, and a paralegal, "TC." Plaintiff seeks $400 per hour for Cooper.  Plaintiff does not state when Cooper was admitted to the bar.  However, he does state that Cooper was admitted to the Southern District of New York in 1997

and "has litigated cases from inception through disposition in New York State Supreme Court, the Appellate Division of the New York Supreme Court, and the Federal District Courts for the Southern and Eastern Districts of New York." (Mem. at 13.)  Cooper "has focused his practice on employment law, representing individuals, collective and class actions, as well as small employers." (*Id.*)

Some courts have held that the appropriate range for a senior attorney in a labor law case is $300 to $400 per hour, while others have found that $450 is the proper upper limit of the range. *See Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020).  The undersigned finds that $350 per hour is a reasonable rate for an attorney with similar experience to Cooper in an FLSA default judgment case that is routine in nature. *See, e.g.*, *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-2520 (FB)(ST), 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 7, 2018), *R&R adopted*, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (reducing the hourly rate of an attorney with over twenty years of experience from $450 to $350 because of "the nature and complexity of the action").

During the Inquest, Plaintiff's counsel clarified that "TC" is his paralegal, Tatianna Cevallos. Although he did not know when Cevallos started working as a paralegal, Cooper stated that she has been a paralegal "for a long time" and is "experienced."  In addition to her work as a paralegal, Cevallos also assists Cooper with Spanish language translation.  The rate sought by Plaintiff for Cevallos is within the range of fees typically awarded within this district and, therefore, is reasonable. *See Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SJF)(AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020) (stating that courts in this district typically award fees ranging from "$70 to $100 for paralegals in fee-shifting cases").

Accordingly, the undersigned respectfully recommends that the reasonable rate for Cooper is $350 and the reasonable rate for Cevallos is $75.

2.      **Reasonableness of Time Billed**

Plaintiff's counsel seeks reimbursement for 21.7 hours of work.  The undersigned has reviewed the billing narratives provided by Plaintiff (Dkt. 12-5) and finds them to be reasonable.

3.      **Calculating the Recommended Fee Award**

As set forth in the chart below, the undersigned calculates the recommended fee award as follows:

| Biller | Rate | Time | Total |
|---|---|---|---|
| Cooper | $350 | 19.2 | $6,720.00 |
| Cevallos | $75 | 1.5 | $112.50 |
| *Grand Total* | | | *$6,832.50* |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $6,832.50 in attorneys' fees.

**B.      Costs**

Plaintiff seeks $546.00 in costs, comprised of $400.00 for filing the Complaint and $146.00 for service of process.  (Dkt. 12-5.)

The undersigned takes judicial notice of the filing fee.  *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it).  Plaintiff submitted an invoice to support his requested service costs (Dkt. 12-5), which are reasonable.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $546.00 in costs.

**VI.    Joint and Several Liability**

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor."  *Fermin*, 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86

24

(S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to . . . impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).

John's Pizza and Polisi were Plaintiff's joint employers from August 18, 2013 until May 31, 2018. And, John's Pizza, Polisi, and Aldinor were Plaintiff's joint employers from June 1, 2018 until June 21, 2019. Accordingly, the undersigned respectfully recommends that John's Pizza and Polisi be found jointly and severally liable for the period from August 18, 2013 to May 31, 2018, and that all three Defendants be found jointly and severally liable for the period from June 1, 2018 to June 21, 2019.

## VI.    Prejudgment Interest

"In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover . . . prejudgment interest as required under the civil practice law and rules." N.Y. Lab. L. § 198(1-a). Since "liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL." *Saucedo*, 2016 WL 8376837, at *16 (citation omitted). Prejudgment interest is not available for a plaintiff's liquidated damages or violations of the NYLL's wage statement provision. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).

The statutory interest rate in New York for prejudgment interest is nine percent per annum. N.Y. C.P.L.R. § 5004. Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as "the earliest ascertainable date the cause of action existed" or a midway point between when plaintiff began and ended work if damages were incurred at various times. *See Santillan*, 822 F. Supp. 2d at 298 (citing N.Y. C.P.L.R. § 5001(b)).

Although Plaintiff requests prejudgment interest from "three (3) years prior to judgment, as a midpoint date from which interest should run" (Mem. at 12), the Court finds that prejudgment interest should be measured from the midpoint between (1) when each Defendant became Plaintiff's "employer" under the NYLL, and (2) June 21, 2019, when Plaintiff stopped worked. *See Hernandez v. Punto y Coma Corp.*, No. 10-CV-3149 (NGG)(RML), 2013 WL 4875074, at *9 (E.D.N.Y. Sept. 11, 2013) ("The midpoint of plaintiffs' employment is a reasonable intermediate date for purposes of calculating prejudgment interest."); *see also Jaime v. David & Son's Constr. Corp.*, No. 17-CV-1499 (ADS)(ARL), 2018 WL 4863658, at *10 (E.D.N.Y. Aug. 30, 2018), *R&R adopted*, 2018 WL 4863594 (E.D.N.Y. Sept. 28, 2018) (same).

Plaintiff's combined minimum wage and overtime damages for which John's Pizza and Polisi are jointly and severally liable are $74,346.30. Prejudgment interest on these damages at a rate of nine percent per annum is $18.33 per day. Plaintiff's combined minimum wage and overtime damages for which Aldinor is liable are $17,353.00. Prejudgment interest on these damages at a rate of nine percent per annum is $4.28 per day.

Accordingly, the undersigned respectfully recommends that (1) Plaintiff be awarded prejudgment interest in the amount of $18.33 per day from July 17, 2016 until the date of judgment for Polisi and John's Pizza, and (2) Plaintiff be awarded prejudgment interest in the amount of $4.28 from December 10, 2018 until the date of judgment for Aldinor.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion be granted as follows:

- Plaintiff's claims for overtime and spread of hours be granted as to John's Pizza and Polisi for the time period from August 13, 2013 to June 21, 2019.

26

- Plaintiff's claim for minimum wage be granted as to John's Pizza and Polisi for the time period between December 31, 2017 and June 21, 2019.

- Plaintiff's claim for minimum wage, overtime, and spread of hours be granted as to Aldinor for the time period from June 1, 2018 to June 21, 2019.

- Plaintiff's claim for failure to provide the requirement wage statements be granted as to all Defendants between June 1, 2018 to June 21, 2019.

Further, the undersigned respectfully recommends that damages be awarded as set forth below.

- Damages for which John's Pizza and Polisi are jointly and severally liable: $130,361.40.

- Damages for which John's Pizza, Polisi, and Aldinor are jointly and severally liable: $49,076.00.

The undersigned also respectfully recommends that prejudgment interest for assessed as follows:

- Prejudgment interest in the amount of $18.33 per day from July 17, 2016 until the date of judgment for Polisi and John's Pizza.

- Prejudgment interest in the amount of $4.28 from December 10, 2018 until the date of judgment for Aldinor.

Finally, the undersigned respectfully recommends that Plaintiff be awarded $6,832.50 in attorney's fees and $546.00 in costs.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
_____

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
          January 24, 2021